Rogers, Appellant, vs. Newton, Respondent.

*November 12 — November 26, 1895.*

*Logs and lumber: Sale: Contract construed.*

A contract by which all the logs which should be cut during a season from certain lands were sold and it was provided that the vendor should deliver them to the vendee, who should at once proceed to saw them into lumber at his mill in such a way as to make as much merchantable lumber as possible; that the lumber should be scaled by a scaler to be agreed upon, and in scaling the same all mill culls and pieces eight feet in length and under should be thrown out, and all the rest should be called merchantable lumber; and that the vendee should pay a certain price for each and every thousand feet of logs delivered, the final settlement at that rate to be based on the scale and measurement made by said scaler, whose decision as to the number of feet of merchantable lumber made from the logs should be conclusive on the parties — is *held* to be a sale of the logs, and, there being no reservation of the culls and unmerchantable lumber, they passed to the vendee as integral part of the logs.

Appeal from a judgment of the circuit court for Ashland county: John K. Parish, Circuit Judge. *Affirmed.*

The appeal is from a judgment sustaining a demurrer *ore tenus* to the complaint. The action is trover for the conversion of lumber. The complaint sets out a written contract as follows:

"For and in consideration of the covenants and agreements hereinafter contained, said party of the first part does hereby sell to said second party, and agree to deliver to said second party on the ice on what is known as 'Pike's Bay,' in the county of Bayfield, eleven hundred thousand feet (1,100,000), more or less, of white pine saw logs, being all the logs that shall be cut during the winter of 1892 and 1893 from the lands owned by the said first party on sections numbered thirty (30) and thirty-two (32), and township number fifty-one (51) north, of range number

four (4) west, which logs shall be marked on the end of each log as follows, to wit, H <, there being no side mark.

"Said first party does further agree to boom said logs in a good and substantial manner, and in the usual manner in which said logs are boomed on the ice; said second party to furnish the boom chains.

"It is agreed by and between the parties hereto that the logs shall be scaled by said first party's scaler as the same are delivered on the ice, and from the scale so made by said first party's scaler ten per cent. (10 per cent.) shall be deducted, and such shall be considered to be the amount of logs for the purpose of making the payments as hereinafter mentioned, until the lumber is scaled and measured as hereinafter provided, which shall be manufactured from said logs.

"For and in consideration of the foregoing covenants and promises said second party does hereby agree to pay to said first party for each and every thousand feet of logs delivered on the ice in Pike's Bay as aforesaid, the sum of twelve dollars and fifty cents ($12.50), payment to be made as follows: Upon the signing and delivery of this contract, the sum of two thousand dollars ($2,000) cash; on or before March 1st, 1893, the sum of three thousand dollars ($3,000); and then, when all of said logs are delivered and boomed on the ice, the full amount according to the scale made by said first party's scaler, less ten per cent. (10 per cent.) thereof at twelve dollars and fifty cents ($12.50) per thousand feet, shall be paid in cash, and the balance shall be paid in cash when the lumber manufactured from said logs is scaled and measured as hereinafter provided.

"It is further mutually agreed that when all of said logs are boomed on the ice they shall be counted by the parties hereto, and an account of the exact number of logs so delivered on the ice; and said second party does agree to move said logs as soon after the ice goes out as practicable to his

sawmill in the city of Ashland and county of Ashland, and commence sawing said logs as soon as he can get them to his said sawmill, and to saw thereon steadily and continuously until all of said logs are sawed.

"And said second party does further agree to saw said logs into lumber, and to trim said lumber so as to make as much merchantable lumber as possible; and lumber shall not be sawed to exceed one thirty-second of an inch full, and no shingles shall be made out of said logs.

"It is further agreed that as said lumber comes from the trimmer it shall be carefully scaled and measured by a competent scaler to be hereafter agreed upon, and in scaling said lumber mill culls and pieces eight feet in length and under shall be thrown out, and all the rest shall be called merchantable lumber; and the final settlement of twelve dollars and fifty cents ($12.50) per thousand feet shall be made and based upon the scale and measurement made by such scaler as hereinbefore provided, and his decision as to the number of feet of merchantable lumber manufactured from said logs shall be final and conclusive upon the parties hereto, except that, if the number of logs sawed in said sawmill shall be less than the number of logs counted on the ice as delivered by said first party to said second party, then to the full amount of lumber scaled and measured as hereinbefore provided there shall be added a sufficient amount to make up for the shortage in logs; counting that the logs so short or missing average the same in size and number of feet of lumber therein as the logs sawed."

The complaint further alleges the complete performance of the contract by both parties, and alleges that, besides the merchantable lumber manufactured from the logs, there was also about 200,000 feet of unmerchantable lumber, of the value of $1,400, which the defendant sold and converted to his own use. The complaint demands judgment for $1,400.

For the appellant the cause was submitted on the brief of *Sanborn, Dufur & O'Keefe.*

*W. L. Windom,* for the respondent.

NEWMAN, J. There is but one question,— whether this was a sale of the logs or only a sale of the merchantable lumber which should be manufactured from them. It seems to be quite clear, on the face of the contract, that what was intended to be sold was the logs. They were to be paid for at the rate of $12.50 per thousand feet of merchantable lumber which should. be, under the terms and stipulations of the contract, manufactured from them. The unmerchantable lumber which should come from the manufacture of the logs was to be disregarded in the computation of the amount to be paid for the logs.' The logs were manufactured and the amount to be paid was ascertained and paid according to the contract. The contract did not reserve to the plaintiff the culls and unmerchantable lumber which should come from the logs; hence such did not belong to him, but passed to the defendant as integral part of the logs. The demurrer *ore tenus* was rightly sustained.

*By the Court.*— The judgment of the circuit court is affirmed.